# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No.  00-3984

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellee,　　　　　*
　　　　　　　　　　　　　　　　　*
　　v.　　　　　　　　　　　　　　*　Appeal from the United States
　　　　　　　　　　　　　　　　　*　District Court for the
Alvie Taylor,　　　　　　　　　　 *　Eastern District of Arkansas
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellant.　　　　 *

_____

Submitted: May 15, 2001
Filed: June 18, 2001

_____

Before BOWMAN, Circuit Judge, and BOGUE[1] and MAGNUSON,[2] District
　　　Judges.[3]

_____

MAGNUSON, District Judge.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

[2]The Honorable Paul A. Magnuson, Chief Judge, United States District Court
for the District of Minnesota, sitting by designation.

[3]Pursuant to 28 U.S.C. § 46(b), the Chief Judge certified the existence of a
judicial emergency necessitating the designation of a panel consisting of fewer than two
members of the Court of Appeals.

Alvie Taylor appeals his conviction for conspiracy to commit bank fraud and bank fraud. On appeal, Taylor argues that the District Court erred by denying his mid-trial motion to sever his case from that of his co-defendants and by failing to determine the genuineness of handwriting exemplars used by the Government. Taylor also contends that the Government failed to produce or to admit the existence of bank surveillance videotapes, in violation of its duty under Brady v. Maryland, 373 U.S. 83 (1963), and that this failure mandates reversal.

I.

Taylor was indicted on April 12, 2000, along with his father, Aven Taylor, and his brother, Aven "Ricky" Taylor, Jr. The scheme charged involved depositing stolen checks into Aven Taylor's business's checking account, and then writing checks from that account for cash and other items. In all, the defendants were charged with depositing more than $56,000 in stolen checks into the business account, and writing checks on that account for more than $42,000.

The three defendants were tried jointly in June 2000. A key witness for the Government was Taylor's cousin, Colleen Verway, who pled guilty for her role in the conspiracy in exchange for her testimony against the Taylors. Verway testified that she participated in the conspiracy, but only at the direction of Appellant Taylor. The jury returned a verdict of guilty as to Taylor and his father, and found Taylor's brother not guilty. On November 30, 2000, the District Court[4] sentenced Taylor to 18 months' imprisonment and four years' supervised release.

---

[4] The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

II.

Taylor contends that the District Court erred in denying his motion to sever Taylor's case from that of his father. He argues that the joint trial prohibited him from introducing evidence as to his relationship with his father, including that his father allegedly abused him, and prohibited him from introducing audiotapes of conversations between his father and Verway, which Taylor contends show that Aven Taylor and Verway were the masterminds of the conspiracy, contrary to Verway's testimony.

Taylor's motion to sever was made after the Government presented its case. Thus, the District Court's denial of the motion is reviewed for abuse of discretion. United States v. Rogers, 150 F.3d 851, 855 (8th Cir. 1998), cert. denied, 525 U.S. 1113 (1999). The Supreme Court has stated that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 538 (1993). As one example of the prejudice that might warrant granting a motion to sever, the Court pointed to a situation where "essential exculpatory evidence" that would be available if a defendant were tried alone is unavailable in a joint trial. Id. (citing Tifford v. Wainwright, 588 F.2d 954 (5th Cir. 1979).) Taylor contends that such is the situation here.

The evidence Taylor asserts that he could have offered if his trial had been severed from that of his father is not "essential exculpatory evidence." At the most, this evidence serves to bolster Taylor's testimony and theory of the case, but it is not exculpatory. As the Government notes, Taylor introduced other evidence that, if believed, proved the points he contends he was not allowed to make because of the failure to sever. Taylor's appeal on this ground is without merit.

III.

Taylor next contends that the District Court erred in failing to determine the genuineness of the handwriting exemplars to which the Government's expert witness compared the checks at issue in the case. The District Court's decision to admit the expert witness's testimony is reviewed for an abuse of discretion. Westcott v. Crinklaw, 68 F.3d 1073, 1075 (8th Cir. 1995).

It is the duty of the District Court to determine the genuineness of handwriting exemplars. Scharfenberger v. Wingo, 542 F.2d 328, 336 (6th Cir. 1976). Taylor argues that the District Court completely failed to inquire into the genuineness of the exemplars used in this case. The Government asserts that there was ample testimony presented as to the origins of the exemplars, and that Taylor himself admitted that he wrote some of the exemplars for the FBI.

Even if the District Court failed to make a specific finding on the genuineness of the handwriting exemplars, the error is undoubtedly harmless. Taylor admitted that some of the exemplars used were in fact his handwriting. The District Court's decision to admit the expert witness's testimony was not an abuse of discretion.

IV.

Finally, Taylor argues that the Government's failure to produce surveillance tapes from the banks at which the checks were cashed, and the Government's insistence that no such tapes existed, substantially prejudiced his defense. The Government responds that no surveillance tapes existed because the checks were cashed in drive-through teller lanes and the banks did not tape these lanes. According

to the Government, because no tapes existed, Taylor was not prejudiced and there is no <u>Brady</u> violation.

Even if Taylor is correct that some of the checks were cashed at walk-up tellers, for which surveillance tapes might have existed, it is clear that in this case no tapes of the days in question in fact existed. Taylor asks this Court to infer that the Government may have failed to produce other, more important, evidence because it failed to produce surveillance tapes. We will not engage in such speculation. In this instance, Taylor has shown no prejudice from the Government's failure to produce non-existent evidence. The Government did not violate its duty under <u>Brady</u>.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.